IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GUSTAVO CARRILLO,
                **Plaintiff,**

-vs-                                                                                      Case No. A-08-CA-774-SS

MICHAEL J. ASTRUE,
                **Defendant.**

_____

# O R D E R

Before the Court is Plaintiff Gustavo Carrillo's Complaint [#4] seeking review of a final decision of the Commissioner of the Social Security Administration pursuant to § 205 of the Social Security Act, 42 U.S.C. § 405(g), Defendant's Answer [#10], Plaintiff's Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#16], and the transcript of the Social Security Record in this case ("Tr.").

All matters in this case were referred to the Honorable Robert Pitman, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective January 1, 1994. On August 7, 2009, the Magistrate Judge issued his report and recommendation that Plaintiff's case should be REVERSED and REMANDED to the Commissioner. *See* Rep. & Rec. at 21-22. Because neither side has timely filed objections to the report and recommendation, the Court is not required to review the file de novo. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985). Nonetheless, the Court has reviewed the case de novo and, having

reviewed the motion, the report and recommendation, the case file as a whole, and the applicable law, the Court ACCEPTS the Magistrate Judge's report and recommendation.

## BACKGROUND

The Magistrate Judge sets forth in his report and recommendation a careful and accurate review of the background in this case. Neither side objects to the Magistrate Judge's recitation of the background, and the Court therefore adopts and incorporates that recitation herein.

### I. Procedural Background

On September 25, 2006, Plaintiff Gustavo Carrillo ("Plaintiff") filed an application for supplemental security income because he claimed he was disabled beginning on February 18, 2005. (Tr. 100.) He completed his application on October 2, 2006. (Tr. 93-95.) His application was denied on November 8, 2006 and, again, after reconsideration on January 24, 2007. (Tr. 44-53, 54-57.) Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). (Tr. 62.)

The ALJ conducted a hearing, at which Plaintiff was represented by counsel, on December 6, 2007. (Tr. 23-39.) The ALJ issued his decision on April 17, 2008. (Tr. 6-18.) He concluded Plaintiff has the following severe impairments: "myalgias, a peripheral neuropathy, pancreatitis, a history of alcohol abuse, and diabetes mellitus." (Tr. 14.) However, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. at 14.) The ALJ further found Plaintiff has the residual functional capacity to lift or carry 25 pounds frequently and 50 pounds occasionally, to stand or walk 6 hours in an 8-hour work day, and sit 6 hours in an 8-hour work day. (Tr. 14.) Finally, although Plaintiff is unable to perform any of his past relevant work,

the ALJ concluded—considering his age, education, work experience, and residual functional capacity—that jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 16-17.) As a result, the ALJ determined that Plaintiff is not "disabled" within the meaning of the Social Security Act. (Tr. 17.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 14, 2008. (Tr. 1-5.) Plaintiff then filed this action in federal court on October 16, 2008, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g). *See* Pl.'s Original Complaint [#4].

## II.  Factual Background

Plaintiff is a 49-year old individual who completed the tenth grade.[1] (Tr. 27.) He previously worked in construction and also as a steel tier and a cable installer. (Tr. 28-29, 105.) He now claims he is unable to work due to his disability. (Tr. 93-95.) He asserts his disability began on February 18, 2005. (*Id.*) He completed his application for benefits on October 2, 2006. (Tr. 93.)

In March of 2006, Plaintiff visited an emergency department managed by Seton. (Tr. 131-138.) He complained of generalized, constant, bone pain that had began abruptly. (Tr. 131.) The medical records indicate he appeared "<u>very</u> healthy" at the time. (Tr. 132, emphasis in original.) He was diagnosed with "nonspecific myalgia." (Tr. 133.) The doctor commented he could see no acute illness, malaise, or muscle atrophy, and discharged him. (Tr. 133.)

This visit was referenced in his Disability Report submitted on October 2, 2006. (Tr. 104.) At the time of his application, Plaintiff stated he suffered from "muscular tear, weak bones, vision

---

[1]Plaintiff was born on October 26, 1959. (Tr. 27.)

problems in left eye." (Tr. 104.) These problems manifested in 2003 but made him unable to work in February of 2005. (Tr. 104.)

In an undated disability report form completed sometime after October 2006, Plaintiff claims that he continued to suffer from "pain in [his] bones with fever." (Tr. 113.) In another undated disability report form completed sometime after January 2007, Plaintiff reported his physical ailments make him unable to do things such as take a shower, because he cannot stand long enough to take a shower due to the pain. (Tr. 125.)

In November of 2006, Dr. James Wright reviewed Plaintiff's application and his medical records from the previous emergency visit. (Tr. 139.) He concluded Plaintiff did not have severe impairments and Plaintiff's allegations were not supported by the record. (Tr. 139.) In January of 2007, Dr. Jeanine Kwun affirmed Dr. Wright's conclusion. (Tr. 140.)

In December of 2006, Plaintiff visited a Austin/Travis County Community Health Center ("ATCCHC"). (Tr. 143.) He was diagnosed with alcohol abuse, pancreatitis, hyperglycemia, hepatitis C, diabetic nephropathy, increased lipids and diabetes. (Tr. 143.) He complained of pain in his bones and in his stomach. (Tr. 163.) He visited the ATCCHC again in January of 2007 complaining of bone and joint pain. (Tr. 161.) The pain, he insisted, had been ongoing for two years and was worsening. (Tr. 161.) He was diagnosed with arthritis in multiple sites and prescribed Tramadol to treat his pain. (Tr. 162.)

Between January and May of 2007, Plaintiff was treated at the ATCCHC regularly. (Tr. 147-57.) His chronic conditions were listed as alcohol abuse, chronic hepatitis uncontrolled diabetes type two without manifestations, pancreatitis, and controlled diabetic nephropathy. (Tr. 147-57.)

In April of 2007, Plaintiff visited the ATCCHC for nutrition assistance. (Tr. 154.) During

the visit, Plaintiff was instructed on his diet and how to control his diabetes and high lipids. (Tr. 154.) Plaintiff did not understand why he needed this counseling. (Tr. 154.)

In May of 2007, Plaintiff's chief complaint was pain in his mid and lower back, but he had not been taking anything for the pain for the last month. (Tr. 149.) Upon inspection of his spine, tenderness was reported "at right T8 area radiating to L4." (Tr. 149.)

No medical records exist for Plaintiff for the period from June and July of 2007. From August to December 2007, Plaintiff again visited the ATCCHC regularly. (Tr. 175-90.) Again, his chronic conditions were listed as alcohol abuse, chronic hepatitis C, uncontrolled diabetes type two without manifestations, pancreatitis, and controlled diabetic nephropathy. (Tr. 175-90.) During his visit in August of 2007, his chief complaint again was pain in his back, described as "bone pain." (Tr. 181.) The records indicate the pain was of "uncertain etiology." (Tr. 182.) Lumbar tenderness was reported. (Tr. 181.) He was again prescribed Tramadol for pain, as well as Flexeril for an unspecified reason. (Tr. 182.)

In October of 2007, Plaintiff visited Brackenridge Hospital's physical therapy department upon referral from the ATCCHC. (Tr. 172.) He was assessed as having moderate difficulty walking, sitting, and bending and severe difficulty in lifting, pushing and pulling. (Tr. 172.) Two weeks later, he had improved in all areas, but retained the same functional limitations. (Tr. 173.) It was recommended he attend physical therapy two times a week for four weeks. (Tr. 172.) However, after three visits, Plaintiff stopped attending physical therapy because the pain had become so intense he could not continue. (Tr. 173.)

In November of 2007, Plaintiff returned to the ATCCHC for treatment, again complaining of back pain. (Tr. 177.) His prescription for pain medication was renewed. (Tr. 178.) The treating

physician commented his hepatitis C and uncontrolled diabetes persisted but concluded that no treatment was necessary for these conditions at the time. (Tr. 178.) In December of 2007, Plaintiff reported his back pain was better but still hurt at the end of the day. (Tr. 175.) He stated he walked around all day because he lives on the street. (Tr. 175.)

In several of his visits to the ATCCHC throughout 2007, physical examinations were performed on Plaintiff's abdomen.[2] (Tr. 149, 159, 164, 179, 183.) Each examination revealed Plaintiff had a soft and non-tender abdomen with no distention. (*Id.*) They also showed Plaintiff had normal bowel sounds. (*Id.*)

There is no medical evidence in the record regarding any impaired vision in Plaintiff's left eye or facial paralysis.[3]

## II. The Hearing Before the ALJ

The ALJ held a hearing on Plaintiff's claim on December 6, 2007. Plaintiff testified about his medical conditions and limitations. Plaintiff, who primarily speaks Spanish, was questioned by the ALJ and his attorney in English during the hearing. However, Plaintiff reported he could understand what he was asked. (Tr. 27.)

The ALJ asked Plaintiff why he is unable to work. (Tr. 29.) Plaintiff responded after thirty minutes of work the pain in his bones intensifies, leaving him unable to work any further. (Tr. 29-30.) He testified he has a stabbing pain in his hands and feet. (Tr. 32.) He stated he has difficulty sitting in a chair and that his back hurts all the time. (Tr. 33.) He reported he could sit in

---

[2]The relevant physical examinations were performed on December 13, 2006, January 30, 2007, May 7, 2007, August 27, 2007, and September 21, 2007. (Tr. at 149, 159, 164, 179, 183.)

[3]In one record, it is unclear whether the doctor circled "abnormal" or "PERRL" (pupils equal, round, reactive to light). (Tr. 132.) There is no other discussion of any problems with Plaintiff's eyes in any of the medical records.

the chair for more than an hour but that the longer he sits, the more he feels pain. (Tr. 33.) He said he is able to stand in line for meals, but it is painful. (Tr. 33.) When asked directly about the pain in his bones, Plaintiff testified that the doctor informed him he did not have enough liquid in his bones. (Tr. 35.)

He testified he is homeless and spends most of the day laying down because he cannot not handle the pain. (Tr. 31.) Plaintiff reported being tired often. (Tr. 35.) Plaintiff stated he sleeps underneath a bridge and there is heavy traffic so he regularly wakes up at night. (Tr. 35.) Plaintiff testified that he would be able to lift 10 or 15 pounds, but not for very long. (Tr. 33.) He testified he had attended physical therapy, but that the physical therapists had refused to treat him further because he could not "handle it." (Tr. 30.)

Plaintiff also testified about his pancreatitis. (Tr. 32.) Plaintiff stated he has abdominal pain that is very intense at times. (Tr. 32.) The last time it occurred was six months prior to the hearing and he went to a doctor who treated him. (Tr. 32.) The pain in his stomach had improved at the time of the hearing. (Tr. 34.)

Plaintiff testified that he was told by his doctor he had diabetes. (Tr. 34.) He said the doctor told him to drink a lot of water, and that he used to be very thirsty, but that the condition had become more normal. (Tr. 34.) He reported he stopped drinking alcohol in September of 2006. (Tr. 31.)

Upon questioning from his attorney, Plaintiff discussed his vision. (Tr. 36.) He said he had difficulty seeing with his left eye. (Tr. 36.) He testified someone told him he was paralyzed on the left side of his face, resulting in difficulty seeing from that eye. (Tr. 36-37.) Although he was prescribed special glasses, Plaintiff thought they were too strong and so he stopped wearing them. (Tr. 36.) He said he could see some things out of his left eye, but it is blurry. (Tr. 37.)

During the hearing, the ALJ noted Plaintiff's attorney had requested consultative examinations of Plaintiff to determine the effect of his conditions and his limitations. (Tr. 35-36.) The ALJ decided to first review the medical evidence before deciding whether to order a consultative examination. (Tr. 36.) The ALJ later denied the request. (Tr. 16.)

The ALJ also heard testimony from Calvin Turner, a vocational expert ("VE"). The VE's testimony comprises only five lines in the hearing transcript. (Tr. 37-38.) The ALJ asked the VE to give a description of Plaintiff's past work. (Tr. 37.) The VE testified Plaintiff used to be a cable installer and a construction steel worker, all of which was heavy, skilled labor. (Tr. 37.) Plaintiff's attorney did not question the VE. (Tr. 38.)

In his decision issued April 17, 2008, the ALJ denied Plaintiff's claim on the ground he was not disabled as defined in the Social Security Act. (Tr. 17.)

## ISSUES PRESENTED

Plaintiff contends the ALJ's decision is flawed on several bases. Specifically, Plaintiff claims: (1) proper weight was not afforded to the treating and examining doctors' opinions; and (2) the ALJ's residual functional capacity finding is not supported by substantial evidence. The Court agrees with the Magistrate Judge the first ground is without merit and should be denied, whereas the second ground is a cause to reverse and remand the case.

## ANALYSIS

**I.    Administrative Definitions and Standards**

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if she is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520. A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders*, 914 F.2d at 618. Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden [] shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

## II. Standard of Review

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash*

*v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

**III.     Discussion**

    **a.     Whether the ALJ Failed to Give Proper Weight to the Treating Doctors' Opinions.**

The Court agrees with the Magistrate Judge the ALJ did not fail to give proper weight to the treating doctors' opinions. Plaintiff contends because he is homeless, the opinions of the doctors who treated him in the emergency room and the ATCCHC must be afforded controlling weight. Plaintiff is correct the opinion of a treating physician who is familiar with a claimant's impairments, treatments, and responses is normally accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995). However, he is incorrect the emergency room and clinic physicians in his case can be considered his "treating physicians." The Federal Regulations define

a treating physician as one "who has, or has had, an ongoing treatment relationship with the patient." 20 C.F.R. § 416.902. Generally, this is someone the patient can establish he sees or has seen with a "frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical conditions at issue." *Id.*

In the present case, Plaintiff has not alleged there is a single physician whom he saw regularly; instead, it is undisputed he was treated by different staff each time he went to the emergency room and the ATCCHC. Therefore, the Magistrate Judge correctly concluded Plaintiff did not have a treating physician, and the opinions of the various physicians who treated him one time each are not entitled to be afforded the weight of a treating physician's opinion.

  **b.**  **Whether the ALJ's RFC Finding was Supported by Substantial Evidence.**

   *(1) Standard for Assessing RFC*

"Residual functional capacity" ("RFC") refers to the claimant's ability to do work despite any physical or mental impairments. 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level. *Id.* § 404.1546. This assessment is based on reports from treating physicians and medical consultants about the claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities. *Id.* §§ 404.1513(b)(6) & 414.1513(c)(1). The ALJ is to assess residual functional capacity "based on all of the relevant medical and other evidence." *Id.* § 404.1546. In general, the claimant is responsible for providing the evidence used by the ALJ to make the finding about his residual functional capacity. *Id.* § 404.1512(c) However, before concluding a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including arranging for a consultative examination(s) if necessary. *See id.* §§ 404.1512(d)-(f). The relevant inquiry for this Court, when

considering the ALJ's determination, is whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### *(2) The ALJ's Findings*

In the present case, the ALJ concluded Plaintiff has the RFC "to lift/carry 25 pounds frequently and 50 pounds occasionally, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. [Plaintiff's] ability to push/pull would be limited to the weights given." (Tr. 14). To reach this conclusion, the ALJ began by reciting the applicable legal standards, and then recounted Plaintiff's testimony at the hearing. (Tr. 15). The ALJ summarized Plaintiff's testimony as follows:

> The claimant, who is homeless, testified he is precluded from working due to back, abdominal, foot, and right hand pain. The claimant reported his treatment regime has included a one week course of physical therapy, and follow-up appointments with his treating physician every three months. The claimant testified he spends a majority of his day lying down, and he denied alcohol use since September 2006. The claimant estimated he could sit less than 1 hour, stand less than 1 hour, walk with pain, and lift/carry 10 to 15 pounds. On questioning by his representative, the claimant reported his abdominal pain has improved with treatment for pancreatitis. The claimant also noted blurred vision in his left eye since 2003.

(Tr. 15). The ALJ then stated he

> finds that [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 15). In other words, the ALJ determined it is possible Plaintiff's impairments *could* result in the type of complaints he makes, but the ALJ ultimately concluded the severity of Plaintiff's

complaints was not credible. The ALJ's reasoning for finding Plaintiff lacked credibility was as follows:

> Thirteen months after his alleged onset date, [Plaintiff] presented to the emergency room reporting generalized "bone pain" for the past year. Physical examination revealed no abnormalities. In fact, [Plaintiff] was described as a "well appearing, very health [sic] young man" These facts, and the fact [Plaintiff] was diagnosed with nonspecific myalgias, do not support the degree of functional limitation alleged commencing February 8, 2005.

(Tr. 15) (emphasis in original)(citations omitted).

The ALJ continued, assessing Plaintiff's credibility and reviewing the medical evidence, and summarizing two medical reports from December 2006 and January 2007:

> There is no evidence [Plaintiff's] overall physical or mental health significantly declined during 2006-07. It is noted in December 2006 [Plaintiff] pursued medical care reporting stomach pain tor the past two years and bone and joint pain. [Plaintiff], who described his activity level as moderate, demonstrated no significant abnormalities on physical examination. Following a January 4, 2007 evaluation, which revealed joint tenderness to palpation of the knees, elbows, and shoulders, the claimant was diagnosed with arthritis in multiple sites and provided with a prescription for Tramadol. [Plaintiff] was also diagnosed with alcohol abuse. These facts, and treatment records that show [Plaintiff], who was ultimately diagnosed with type II diabetes mellitus and a diabetic neuropathy, reported improvement with medication and abstinence from substance use, suggest at most mild to moderate symptomatology.

(Tr. 15-16) (citations omitted). In effect, the ALJ acknowledged Plaintiff sought medical treatment for pain in his stomach, bones and joints, but countered this evidence with Plaintiff's report he could engage in moderate activity and had no reported abnormalities. Although the exam had revealed tenderness in several areas, and Plaintiff was ultimately diagnosed with arthritis severe enough to warrant a prescription for pain medication, alcohol abuse, diabetes, and diabetic neuropathy, the ALJ found those diagnoses were mitigated by reports the conditions improved with medicine and

abstinence from alcohol. Thus, the ALJ concluded there was mild to moderate symptomology "at most." *Id.*

The ALJ continued by noting Plaintiff reported increased pain in his back, but determined this report to be undercut by the physical examination, which revealed no tenderness, and the fact Plaintiff was not concerned his prescription for pain medication had lapsed. (Tr. 16). The ALJ then determined Plaintiff was not precluded from working because he had reported he walked a majority of the day and his pain was manageable with prescription pain relievers. (*Id.*). As a result, the ALJ concluded the available evidence demonstrated "[a]t most," Plaintiff could not perform heavy work.

The ALJ ended his analysis by explaining why he did not grant Plaintiff's request for a consultative examination.

> It should be noted the claimant's representative requested a consultative evaluation due to the claimant's limited accessibility to medical care. 20 CFR § 416.917 directs a consultative evaluation is warranted when medical source cannot or will not give sufficient evidence to determine whether an individual is "disabled." The evidence of record is sufficient to make a determination without a consultative evaluation. The claimant has repeatedly been diagnosed with alcohol abuse, which likely accounts for his homeless status. His "bone pain" has been attributed to myalgias, symptomatology the evidence indicates has improved with medication. He has also been diagnosed with type II diabetes mellitus and a peripheral neuropathy. Despite his failure to take medication as prescribed, the claimant's peripheral neuropathy is controlled. There is also no evidence the claimant, who has been diagnosed with hepatitis C, has reported active symptomatology or developed end organ damage. These facts do not suggest symptomatology that would preclude medium work, nor docs this evidence leave any significant questions regarding the claimant's overall physical health unexplained. For these reasons, the undersigned has determined that a consultative evaluation is not warranted.

(Tr. 16.) The ALJ concluded the evidence in the record was sufficient to support a determination Plaintiff was not disabled. In support of this determination, the ALJ relied on the fact Plaintiff's pain is improved with medication, Plaintiff's neuropathy is improved with medication, and Plaintiff's

hepatitis C, not one of the impairments the ALJ determined were severe, has no active symptomatology.

Based on the evidence described above, the ALJ concluded there was sufficient evidence for him to conclude Plaintiff could lift 25 pounds frequently and 50 pounds occasionally, Plaintiff could stand and walk for six hours a day and Plaintiff could sit six hours a day. He also concluded the evidence in support of this finding was so clear, consistent, and convincing he did not need to order a consultative examination.

### *(3) Plaintiff's Contentions*

Plaintiff argues the RFC finding is not based on substantial evidence because of the following errors on the part of the ALJ: (1) the ALJ did not address Plaintiff's problems with his eye; (2) the ALJ misstated the name of Plaintiff's condition; and (3) more generally, the ALJ failed to provide adequate analysis in reaching his residual functional capacity finding and did not properly consider certain pieces of medical evidence, including the reports from Plaintiff's physical therapist.

### *(4) Discussion*

First, because there was undisputedly no medical evidence in the record to substantiate Plaintiff's testimony regarding his problems with his eye, the ALJ was not required to address the alleged impairment. An ALJ is not required to address an impairment based solely on the claimant's contentions if there is no medical evidence to support the contentions. *See* SSR 96-8p. Thus, the failure to address Plaintiff's eye problems was not error on the part of the ALJ.

Secondly, Plaintiff contends the ALJ misstated the name of his condition, which is properly called "diabetic neuropathy." The ALJ referred to it repeatedly as "peripheral neuropathy," which refers to a disorder of the nervous system; diabetic neuropathy, on the other hand, is a "syndrome

occurring in people with diabetes mellitus and is characterized by albuminuria, hypertension, and progressive renal insufficiency." STEDMAN'S MEDICAL DICT. at 1211; 1191 (27th ed. 2000). Plaintiff contends this mistake renders the ALJ's RFC finding flawed, as it failed to take into account his actual medical condition. This argument is one regarding the evidentiary support for the RFC finding, and is thus subsumed into Plaintiff's third argument, to which the Court now turns.

Finally, the Court agrees with the Magistrate Judge the ALJ's finding as to Plaintiff's RFC is not supported by substantial evidence. As the Magistrate Judge noted, there is no evidence in the record indicating Plaintiff has the RFC to life 25 pounds frequently and 50 pounds occasionally, stand or walk six hours a day, and sit six hours a day. The ALJ rejected Plaintiff's testimony and his reports to physicians regarding his level of pain. But a determination Plaintiff is not credible is not sufficient, on its own, to reach a conclusion he is not disabled. *See* SSR 96-7p ("...a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record, including the individual's statements, must be considered before a conclusion can be made about disability."). The ALJ in the present case simply concluded Plaintiff was not credible, but did not replace the excluded evidence with any counter-evidence demonstrating Plaintiff has the RFC adopted by the ALJ. The ALJ apparently based his RFC finding on the May 2007 record indicating Plaintiff exhibited no tenderness in the spine, normal flexion, negative straight leg raises, full muscle strength, intact reflexes, and no gait abnormality, and indicating Plaintiff was not concerned his prescription had lapsed, and had stated to the doctor he could walk a majority of the day. *See* Tr. 16. While this evidence may be ***consistent*** with the ALJ's finding regarding Plaintiff's RFC, it is by no means substantial evidence to support that finding absent any other medical evidence.

Furthermore, as the Magistrate Judge notes, the ALJ failed to present a narrative discussion, citing specific medical facts and non-medical evidence, to describe how the evidence supports his conclusion as to Plaintiff's RFC, which he is required to do when making his RFC assessment. *See* SSR 96-8p. The ALJ cited no evidence Plaintiff is able to lift 25 pounds, or walk, stand and sit for six hours per day. The only explicit evidence in the record as to Plaintiff's functional limitations is the report from his physical therapist, which simply states he has moderate limitations in his ability to bend, stoop, twist, sit, and walk, and severe limitations in his ability to lift, push, and pull. (Tr. 173). The ALJ did not explicitly adopt or reject the therapist's determination, but simply stated there were no signs of rdiculopathy, such that Plaintiff is able to perform all but heavy work. (Tr. 16). The ALJ committed error insofar as he did not explain why he failed to rely on the available evidence from the physical therapist, but instead dismissed the therapist's report cursorily without adequate explanation. *See* SSR 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Likewise, the ALJ did not perform his analysis in the correct order. He examined the evidence, and then immediately went on to reach a conclusion about the level of work Plaintiff could perform. But the RFC assessment is supposed to be conducted as follows: first, the ALJ must review the evidence to reach a conclusion about how the claimant's conditions affect his abilities, if at all, and only then is the ALJ supposed to decide what level of work (light, medium, or heavy) a claimant can perform given those limitations. *See generally* SSR 96-8p. The ALJ did not explain how he reached his conclusion as to Plaintiff's RFC or identify the evidence that led him to believe Plaintiff's limitations enabled him to do medium work.

Likewise, neither did the ALJ perform a function-by-function assessment of Plaintiff's capabilities, notwithstanding the fact the ALJ is required to evaluate the limitations and restrictions imposed by ***all*** of a claimant's impairments, even those that are not severe. *Id.* The ALJ did not explain whether Plaintiff had limitations due to his pancreatitis (or discuss the pancreatitis at all), although he initially concluded this condition was severe. He also did not analyze or decide whether Plaintiff was limited by his "diabetic neuropathy," and even described it as "peripheral neuropathy," which is a different condition altogether. Given the ALJ's mistaken reading of the record, it is impossible to know how he evaluated this evidence.

Furthermore, had the ALJ concluded there was insufficient evidence to reach a conclusion about Plaintiff's RFC, he had the authority to request a consultative examination. *See* 20 C.F.R. § 404.1517. However, the ALJ denied Plaintiff's counsel's request for a consultative examination. Although this is within the ALJ's discretion, a consultative examination is proper when there is insufficient evidence in the record to determine whether a claimant is disabled, as appears to be the case in the present case. Because there are several ambiguities in Plaintiff's medical records,[4] as noted throughout this order, and a dearth of medical records as a whole, this is a case which normally should require a consultative examination. *See* 20 C.F.R. § 1519a(b)(1), (4).

The Court acknowledges it may not reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to

---

[4] For instance, Plaintiff's pancreatitis, while listed as a "chronic" condition, is never described with particularity and any limitations that may result from it are not discussed in the medical evidence. Plaintiff's diabetic nephropathy is chronic but "controlled," according to the ALJ, but this is the extent of the description of this condition. Plaintiff was diagnosed with arthritis in January of 2007, but this was not mentioned in the records again. Plaintiff suffers from pain severe enough to warrant medication, but no cause of the pain has been diagnosed.

support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). However, the Court finds the medical evidence in the record in this case does not provide substantial evidence to support the ALJ's finding Plaintiff is not disabled. Therefore, the Court finds the decision of the Commissioner must be REVERSED and the case REMANDED for the ALJ to perform an appropriate analysis, and reach conclusions based on substantial evidence, in accordance with sentence four of 42 U.S.C. § 405(g).

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that the Report and Recommendation of the Magistrate Judge [#17] is ACCEPTED.

IT IS FURTHER ORDERED that the decision of the Social Security Commission is REVERSED, and the above-styled and numbered cause is REMANDED to the Commissioner of Social Security for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS FINALLY ORDERED that all pending motions are DISMISSED AS MOOT.

SIGNED this the 30th day of November 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE